UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CAREY FAUGHT, | ) |
| Petitioner, | ) ) ) |
| v. | ) No.: 3:21-CV-321-TAV-DCP ) |
| VINCENT VANTELL, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. §2254, challenging his confinement under Knox County convictions for aggravated burglary, employing a firearm during a dangerous felony, reckless endangerment, two counts of attempted aggravated robbery, and two counts of especially aggravated robbery [Doc.1]. Respondent has filed a motion to dismiss the petition as untimely, which is also pending [Doc. 19]. After reviewing the parties' filings and the relevant state court record, the Court has determined that the petition is untimely, Petitioner is not entitled to relief under §2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the reasons set forth below, the §2254 petition will be **DISMISSED** as untimely and Respondent's motion to dismiss will be **GRANTED**.

### I. BACKGROUND

On September 21, 2010, a grand jury indicted Petitioner for two counts of aggravated burglary, employing a firearm during a dangerous felony, especially aggravated robbery, aggravated robbery and one count of attempted second degree murder [Doc. 18-1 p. 7-13].

After a trial, a Knox County jury found Petitioner guilty of aggravated burglary, employing a firearm during a dangerous felony, reckless endangerment, two counts of attempted aggravated robbery and two counts of especially aggravated robbery [*Id.* at 55-57]. The trial court sentenced Petitioner to a total of 48 years' incarceration [*Id.* at 88-92]. Petitioner appealed, challenging the sufficiency of the evidence, that his conviction for employing a firearm during a felony violated double jeopardy principles, and that his sentence was improper [Doc. 18-7]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed, finding that Petitioner was not entitled to relief on his claim that the evidence was insufficient to support his conviction and further finding that Petitioner's firearm conviction did not violate principles of double jeopardy and that Petitioner's sentence was proper. *State v. Faught*, No. E2012-02419-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 221, at *19 (Tenn. Crim. App. Mar. 3, 2014) ("*Faught I*"). On September 2, 2014, the Tennessee Supreme Court ("TSC") denied Petitioner permission to appeal [Doc. 18-13].

On May 19, 2015, Petitioner filed a pro se petition for post-conviction relief [Doc. 18-14 p. 4-29], which the post-conviction court denied [*Id.* at 108]. Petitioner then appealed to the TCCA [Doc. 18-20], and the TCCA affirmed, finding that Petitioner failed to prove he had received ineffective assistance of counsel. *Faught v. State*, No. E2019-00436-CCA-R3-PC, 2020 Tenn. Crim. App. LEXIS 175, at * 10 (Tenn. Crim. App. Mar. 9, 2020) ("*Faught II*").

On April 20, 2020, in lieu of an application for permission to appeal to the TSC, Petitioner filed a motion for extension of time within which to file his application [Doc. 18-24], which the TSC denied on April 21, 2020 as Petitioner did not include said application along with this motion [Doc. 18-25]. On June 2, 2020 Petitioner filed an application for

2

permission to appeal [Doc. 18-27].¹ The TSC dismissed Petitioner's application for permission to appeal as untimely, finding that "[P]etitioner did not file a motion to accept a late-filed application." *Faught v. State*, No. E2019-00436-SC-R11-PC, 2020 Tenn. LEXIS 425, at *1 (Tenn. July 17, 2020) ("*Faught III*"). Subsequently, on August 5, 2020, Petitioner filed a "motion to recall mandate" [Doc. 18-30], which the TSC denied on August 12, 2020 finding that Petitioner had "not established grounds to recall the mandate" [Doc. 18-31]. Petitioner then filed a letter to ascertain the status of his appeal [Doc. 18-32] and in response, the TSC entered an order on December 10, 2020, reiterating that the Court had dismissed Petitioner's application on July 17, 2020 as both lacking merit and untimely and again finding that Petitioner had not presented grounds to recall this mandate [Doc. 18-33].

On May 7, 2021, Petitioner submitted the instant petition, which he originally filed in the United States District Court for the Western District of Tennessee [Doc. 1].² After the Western District ordered Petitioner to submit either a filing fee or an application to proceed *in forma pauperis* [Doc. 3] and Petitioner failed to comply, the Court dismissed the petition without prejudice [Doc. 5]. Less than a month later, Petitioner submitted his filing fee along with a letter, which the Court construed as a motion to vacate its dismissal pursuant to Federal

---

¹ Petitioner states that this document was given to prison mailing authorities on May 28, 2020 [Doc. 18-27 p. 17].

² The Western District received and filed this document on May 10, 2021. While Petitioner avers that he submitted this document into the prison mailing system on May 4, 2021 [Doc. 1 p. 14], the document is stamped as being received by prison authorities on May 07, 2021 [Doc. 1 p. 30]. According to the prisoner mailbox rule, the petition was then filed on May 7, 2021. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (explaining that the prisoner mailbox requires federal courts to use the day the document is handed to prison officials for transmittal to the Clerk as the date of filing); Rules Governing Section 2254 Cases §3(d) (providing that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.").

Rule of Civil Procedure 60(b) [Docs. 7, 8, 9]. In response, the Western District Court vacated its judgment and reopened the case [Doc. 9] and transferred the case to this Court [Doc. 11].

On September 14, 2021, this Court directed Respondent to respond [Doc. 12] and Respondent complied, filing a Motion to Dismiss the instant petition as time-barred [Doc. 19]. Petitioner responded, arguing that his petition was timely or, in the alternative, that he was entitled to equitable tolling as he had been diligently pursuing his rights but faced extraordinary circumstances preventing him from timely filing due to quarantine and lockdown requirements related to the COVID-19 pandemic [Doc. 23]. Respondent filed a reply, arguing that Petitioner was not entitled to equitable tolling where records from Hardeman County Correctional Facility demonstrated that lockdowns did not prohibit Petitioner personally from accessing the library or timely filing [Doc. 29]. Petitioner filed a sur-reply, as permitted by the Court [Doc. 31], in which he largely reiterated the arguments contained in his original response, but also argued that despite the evidence produced by Respondent, Petitioner was denied full access to prison law facilities and aids [Doc. 32]. This matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal habeas petitions pursuant to §2254 are subject to a one-year statute of limitations set out by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. §2244(d). Specifically, a petitioner has one year to file an application from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

4

United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1). In most cases, subsection (A) provides the operative date, and the one-year limitations period begins to run on the day following "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A); *See* Fed. R. Civ. P. 6(a) (providing "the day of the act, event, or default from which the designated period of time begins to run shall not be included").

However, the statute of limitations is tolled when "a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (*emphasis added*). An appeal is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). To determine if Petitioner's collateral attack was properly filed, the Court looks to how the state courts treated it. *Griffin v. Lindamood*, No. 2:16-cv-188, 2017 U.S. Dist. 143996, at *10 (E.D. TN Sept. 6, 2017).

In addition to the statutorily-provided tolling allowance, the one-year limitations period for §2254 petitions is also subject to equitable tolling where appropriate. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). However, this doctrine should be applied sparingly by district courts and applies only in limited circumstances. *Jurado v. Burt*, 337 F.3d 638, 642

5

(6th Cir. 2003). Petitioner is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotations omitted).

### III. ANALYSIS

Here, the TSC denied Petitioner permission to appeal on September 2, 2014, and the judgments against him became final ninety days later, on December 1, 2014.[3] Accordingly, the AEDPA statute of limitations for Petitioner to challenge these judgments began running December 2, 2014 and ran until Petitioner filed his state court post-conviction petition on May 19, 2015, for a total of 168 days. The TCCA denied Petitioner's post-conviction appeal on March 9, 2020. Petitioner then had sixty days, or until May 8, 2020, to file an application for permission to appeal to the TSC. *See* Tenn. R. App. P. 11(b). While the parties agree that the statute of limitations for Petitioner's claims then began running on May 9, 2020, they disagree on whether the statute of limitations was subsequently statutorily tolled before it expired. Respondent contends that because Petitioner's application for permission to appeal was found to be untimely it could not toll the limitations period, which then expired after 197 days on November 22, 2020 [Doc. 20 p. 4]. Petitioner, however, argues that the statute of limitations only "resumed [running] for 37 days until the day the petitioner filed his motion for extension of time on (4-17-20) [sic],"[4] which initiated his application for permission to appeal, and was tolled until December 10, 2020, when the TSC entered its last order denying

---

[3] Ninety days is the period during which Petitioner could have, but did not, seek a writ of certiorari from the Supreme Court. *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).

[4] It remains unclear to the Court why Petitioner alleges that a statute of limitations period which began running on May 9, 2020 ran for "37 days" before his filing on April 17, 2020.

6

Petitioner's motion to recall the mandate dismissing his application [Doc. 23 p. 1-2]. The Court agrees with Respondent.

Because the TSC found Petitioner's application for permission to appeal untimely as he failed to comply with procedural requirements, it was not properly filed and could not toll the statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that an untimely state court post-conviction petition is not "properly filed" in order to warrant statutory tolling); *Artuz*, 531 U.S. at 8 (holding that the filing of a petition must comply with applicable laws and rules in order to be properly filed); *Griffin*, 2017 U.S. Dist. 143996, at *10 (holding that the courts look to how a state court treated a petition to determine whether it was properly filed). Accordingly, the statute of limitations, which had already run for 168 days, began running again on May 9, 2020 and was not tolled during Petitioner's filings regarding his application for permission to appeal, which ended in dismissal on July 17, 2020.[5]

On August 8, 2020, following Petitioner's untimely application, Petitioner filed a motion to recall the TSC's mandate dismissing his petition, which the TSC denied first on August 12, 2020 and again on December 10, 2020; Petitioner argues he is entitled to statutory tolling for the entirety of this period as well. Assuming, without deciding, that this motion could toll the statute of limitations and indeed tolled it until December 10, rather than the first denial on August 12, the instant petition still would not be timely. Under this framework, the statute of limitations would have run for 168 days prior to Petitioner's filing of his post-conviction petition and 88 days from May 9, 2020 to August 8, 2020, leaving Petitioner with

---

[5] Even if the statute of limitations did not begin running until July 18, 2020, the day following the dismissal of his application, the remaining 197 days would have expired on January 31, 2021, meaning that Petitioner's May 7, 2021 petition was untimely by 96-six days.

7

109 days in the limitations period. Running from December 11, 2020, Petitioner would have then had until March 30, 2021 to file his petition, rendering his May 7, 2021 filing untimely.

As Petitioner is not entitled to statutory tolling which would warrant relief from the time-bar of this petition, the Court next turns to his claim for equitable tolling. Petitioner argues that he is entitled to equitable tolling because he (1) has been pursuing his rights diligently and (2) faced extraordinary circumstances due to the COVID-19 pandemic which prevented him from filing in a timely manner [Doc. 23 p. 3]. Petitioner argues that his first timely filings in state court and the fact that, upon denial of his post-conviction appeal, he immediately began attempting to initiate permission to appeal proceedings to the TSC are evidence that he was diligently pursuing his rights [*Id.* at 2-3]. Petitioner likewise claims that his late application was "filed and accepted" by the TSC "because of the fact extraordinary circumstances showing [sic] that the first motion of extension of time should have been accepted thus the time should have been tolled starting with that motion." [Doc. 23 p. 2].[6] As for extraordinary circumstances, Petitioner alleges that lockdowns and quarantine periods related to COVID-19, extending from March 2020 to November 2020, and his own "three 21-day lockdowns," "deterred [him] badly to the degree that on several occasions the motions and legal documents that were sent were handwritten or poorly constructed" and "crippled [him] from researching, getting legal advice and filing in a beneficial way" [*Id.* at 3]. Petitioner claims that the total length of time the correctional facilities were in lockdown would cover

---

[6] The Court remains unsure what Petitioner is referencing here, at the TSC's order indicates that Petitioner's application was dismissed as untimely.

any period of lateness [ *Id.*].[7] Respondent counters that while Courts have held that issues related to the COVID-19 pandemic can constitute extraordinary circumstances, that Petitioner fails to support his claim that he was personally impacted with any evidence except a "self-serving affidavit that states Hardeman County Correctional Facility experienced quarantine lockdowns periodically through 2020 and continued into 2021." [Doc. 29 p.1-3]. The Court agrees with Respondent.

Petitioner ultimately bears the burden of proving that he is entitled to equitable tolling, *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012), and the limitations period "may only be tolled where the circumstances are both beyond the petitioner's control and unavoidable even with due diligence." *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). The COVID-19 pandemic has resulted in many cases where petitioners allege that the associated lockdowns and quarantine periods entitle them to equitable tolling. Indeed, in some cases, "Courts have concluded that the COVID-19 pandemic 'could – in certain circumstances –' conceivably warrant equitable tolling." *Frelix v. Perry*, No. 3:22-CV-00178, 2022 U.S. Dist. LEXIS 110423, at *6 (M. D. Tenn. June 22, 2022) (citations omitted); *see also Pryor v. Erdos*, No. 21-3908, 2022 U.S. App. LEXIS 8729, at *5 (6th Cir. Mar. 31, 2022) (compiling Sixth Circuit cases which note that the "COVID-19 pandemic could amount to an extraordinary circumstance warranting tolling."). However, general allegations of "placement in segregation and lack of access to legal materials" will not suffice to warrant tolling, "especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from

---

[7] Petitioner also argues that Respondent fails to make a necessary showing that Respondent was prejudiced by Petitioner's late filing [Doc. 23 p. 3-4].

timely filing a habeas petition." *Andrews v. United States*, No. 1:17-1693, 2017 U.S. App. LEXIS 28295, at *2 (6th Cir. Dec. 12, 2017) (citations omitted). A petitioner seeking relief under the guise of the COVID-19 pandemic is not automatically entitled to relief, but rather must still "establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his [petition]," in other words that he "would have timely filed had COVID-19 not caused external obstacles." *Frelix*, 2022 U.S. Dist. LEXIS 110423, at *7 (internal quotations and citations omitted); *see e.g., Terrell v. Davids*, No. 1:22-cv-32, 2022 U.S. Dist. LEXIS 13347, at *11 (W.D. Mich. Jan. 25, 2022) (holding that petitioner was not entitled to relief where there were no facts to support that pandemic-related restrictions prevented petitioner from timely filing).

Here, while Petitioner raises generalized allegations regarding lockdowns and claims that he was personally subjected to three twenty-one day quarantine periods, he has not sufficiently proven that the restrictions related to the COVID-19 pandemic prevented him from timely filing his petition. Respondent has presented correctional facility records which indicate that from January 2020 to January 2021, Petitioner signed up for forty-five passes to the prison law library and was issued thirty-six passes but only accessed the library ten times, nine of which occurred during the time period of the COVID-19 pandemic restrictions.[8] During the specific time period from July 2020, when Petitioner's application for permission to appeal the denial of his post-conviction petition was dismissed, to November 22, 2020, when

---

[8] Both Petitioner and Respondent state that Petitioner only accessed the library nine times, however the records produced by respondent indicate that Petitioner accessed the library ten times [Doc. 29 p. 12-13]. The Court also presumes that the duplicate entry for "11-10-20" indicates only one pass sought and given [*Id.*].

10

Petitioner's AEDPA statute of limitations expired, Petitioner was issued eleven passes and only utilized five. Respondent also included an affidavit sworn by the correctional facility's librarian indicating that during pandemic restrictions the law library remained open to those inmates who were not in quarantine and that there were policies in place to assist quarantined inmates in accessing legal aides, specifically prioritized by known-arising deadlines.

Petitioner counters this evidence through an affidavit in which he states that he made use of the library "every time he was actually allowed" [Doc. 32 p. 10]. Petitioner also argues that the records on which Respondent relies reflect an inaccurate reality, as "just because passes are issued doesn't mean that the Petitioner always received them or that pod lock downs [sic] don't occur after passes are issued," and that the policies for assisting quarantined inmates access legal help were not followed [*Id.* at 6].

However, Petitioner's general sworn assertion that he used the library when "he was actually allowed" to do so is conclusory. Petitioner, who bears the burden of proving he is entitled to equitable tolling, has placed no specific proof in the record that matters outside of his control prevented him from accessing the law library on any, much less all, of the dates where the provided records indicate a library pass was issued which Petitioner failed to use. Petitioner has likewise not offered proof, outside of his own statement, that the protective policies in place were not followed or that he was denied access to legal aides during alleged quarantine periods. Accordingly, the Court cannot find that Petitioner was reasonably diligent in pursuing his rights where he has failed to offer evidence that he adequately utilized the tools given to him to research and prepare his federal petition or was prevented by some external factor from doing so. *See* Order, *Burrows v. Boyd*, No. 2:21-cv-2356-SHM-TMP (W.D. Tenn.

May 11, 2022) [Doc. 29-3] (holding that petitioner was not entitled to equitable tolling due to COVID-19 pandemic where he only took advantage of five out of the twenty opportunities he was given to access the library during his limitations period).[9]

Moreover, even if the Court assumes that pandemic restrictions prohibited Petitioner from accessing the library as often as he wanted, Petitioner admits that during the time period where he could have researched and filed his federal petition, he used the library five times to file two state court motions requesting that the TSC recall the mandate dismissing his application. This choice does not entitle Petitioner to equitable tolling. *See Pryor*, 2022 U.S. App. LEXIS 8729, at *6 (finding that petitioner was not entitled to equitable tolling as he was capable of pursuing his rights "notwithstanding any limitations on access to a law library" where he pursued state court post-conviction relief *after* COVID-19 restrictions were put in place).

Here, it appears that Petitioner was not prohibited from filing by the COVID-19 pandemic, but rather by what seems to be his own decision to pursue multiple subsidiary motions to the TSC before researching and filing his federal habeas petition. Although Petitioner pleads for equity and flexibility in application of the statute of limitations, even granted the leniency afforded to pro se petitioners, the Sixth Circuit has provided that "an inmate's lack of legal training, his poor education, [and] even his illiteracy does not give a court reason to toll the statute of limitations." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir.

---

[9] The Court also notes that while Petitioner alleges that he was "on lockdown" from the end of August or beginning of September until November [Doc. 32 p. 3], the records produced by Respondent indicate that Petitioner accessed the law library twice in October and three times in November [Doc. 29 p. 12-13].

12

2002) (citations omitted); *Keeling*, 673 F.3d at 464 (holding "Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing."). The Court declines to abandon the law regarding the statute of limitations and equitable tolling to grant Petitioner relief, where his untimeliness was derived not from some external factors, but rather from Petitioner's own decision-making.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED,** and this action will be **DISMISSED**. Respondent's motion to dismiss [Doc. 19] the petition is accordingly **GRANTED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial

13

of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not disagree that Petitioner's petition is untimely and that Petitioner is not entitled to equitable tolling. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE